## WILLIAM A. BIDLEMAN *v.* BENJAMIN S. BROOKS.

ASSESSMENT OF LAND FOR TAXES.—If the Assessor, in assessing a city lot owned and occupied by the owner as a single lot, arbitrarily divides the same, and assesses one part to the owner and another part to unknown owners, the assessment to the unknown owners is illegal, and a tax deed under a sale of the same for non-payment of the tax is void.

TAX DEED AS EVIDENCE OF TITLE.—The *prima facie* evidence of title furnished by the recitals of a tax deed is overthrown by showing that the assessment was illegal.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Henry B. Janes,* for Appellant.

*Brooks & Whitney,* for Respondent.

By the Court, SAWYER, J.

This is an action to recover certain lands in San Francisco. The cause having been tried without a jury, the Court found for defendant, and rendered judgment accordingly. A new trial on the ground that the evidence is insufficient to justify the findings, was applied for by plaintiff, and denied. Plaintiff appeals from the order denying a new trial, and from the judgment.

The plaintiff's title depends solely upon tax deeds executed upon a sale for taxes for the fiscal year ending June 30, 1862. The plaintiff introduced in evidence his tax deeds, proved a demand upon defendant for possession before the commencement of the suit, and rested.

It appeared from the evidence introduced by defendant, and further evidence in rebuttal on the part of plaintiff, that defendant, Brooks, was at the time of the assessment, and he had been since the summer of 1859, the owner in fee of the whole of fifty vara lot No. 835, and that his conveyance was on record; that the premises in question are parts of said fifty

vara lot; that before and at the time of the assessment in question, there was a house and various outbuildings on said lot, actually occupied by his tenants; that the whole fifty vara lot was inclosed by one fence, and not divided; that it was used as one lot, the tenant of defendant with his family living in the house, and thus occupying the premises as one lot down to the time of the sale; that the lot was not assessed as an entire lot, but the larger part was assessed to defendant, Brooks, as owner, and the premises in controversy arbitrarily cut off by the Assessor, and separately assessed to unknown owners.

The principal question is whether the property was lawfully assessed. We do not think it was. The Assessor is nowhere authorized to arbitrarily divide up lots into strips to suit his caprice, and assess such several portions separately. If he may divide up a lot of well known boundaries into strips twenty feet wide, he may divide it into strips of one foot in width, or even smaller dimensions, and assess each separately, and thus render it not only greatly inconvenient and oppressive to. the owner, but almost impossible for him to ascertain whether his taxes have all been paid or not. The law undoubtedly contemplates that each lot of well known dimensions and boundaries shall be assessed as one lot. In this instance, there was a lot of the ordinary dimensions—the smallest of the lots as originally officially surveyed and platted in that part of the city—which had not been subdivided by the owner. It was inclosed by a single fence, separating it distinctly from all other lands, and had a dwelling house and outbuildings upon it, the whole openly and notoriously occupied as a single lot or messuage by the defendant's tenant and his family. Yet it was arbitrarily sliced up into at least three parts, and each separately assessed as a distinct lot, the larger portion—more than. half—being assessed to the real owner, the defendant, and the other two parcels to unknown owners. Such an assessment of a tract of land constituting one well known lot, and actually occupied as such—if it would not

necessarily have such an effect—would be very likely to mislead the owner and result—as in this instance—in a sale of his property. The owner calls to pay his taxes. A list of all the taxes against him is furnished. Upon looking it over he finds a lot in a certain locality taxed to him, and, without scrutinizing the boundaries very closely, he naturally concludes that the whole lot is assessed to him—as it should be—pays his taxes and rests in security, till several years afterwards he finds that a small strip has been, in fact, assessed to unknown owners, and without his knowledge, or fault, sold. Such would be the inevitable result if such a system of assessment were tolerated. The object of levying taxes is to secure revenue for the purposes of the Government, and not, by deceptive assessments to entrap the unwary into the loss of their lands. In cases where it is difficult to ascertain whether a tract of land has been divided into smaller lots or not, it might not be proper to scrutinize the acts of the Assessor too rigidly, if it can be seen that no injury could result; but the assessment of a single lot notoriously occupied as this was, the greater part to the owner, and smaller portions to unknown owners, is a gross violation of both the letter and the spirit of the law, and if upheld would lead to great abuses and injustice. It is, to our minds, highly probable that the assessment in question did in fact mislead the defendant, and that the sale of the property was the result of this misapprehension. At all events, he was liable to be thus misled to his injury. The assessment being illegal, the *prima facie* case made by the tax deeds, conceding them to be sufficient in form, is overthrown. For these reasons we do not think that we should be justified in setting aside the findings on the grounds of insufficiency of the evidence to sustain them.

This view renders it unnecessary to discuss the various other points made by the respondent, and we think there is nothing requiring notice in the other points made by the appellant.

Judgment affirmed.