Filed 9/15/15  P. v. Lopez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRIS LUZ LOPEZ,<br><br>    Defendant and Appellant. | H040913<br>(Santa Clara County<br>Super. Ct. No. F1345890) |

Defendant Chris Luz Lopez seeks to withdraw no contest pleas he entered as part of an agreement to resolve a felony complaint alleging one count of continuous sexual abuse of a child under 14 (Pen. Code, § 288.5, subd. (a));[1] six counts of lewd or lascivious acts on a child under 14 (§ 288, subd. (a)); and a multiple victim special allegation as to all seven counts (§ 1203.066, subd. (a)(7)).  Defendant argues he was coerced by his deputy public defender into accepting the plea agreement; the same deputy public defender provided ineffective assistance by not advising defendant that he was subject to lifetime sex offender registration (§ 290); his privately-retained counsel provided ineffective assistance by not preserving and raising as a ground to withdraw his pleas the trial court's failure to advise regarding section 290; and that the trial court abused its discretion by imposing a $10,000 restitution fine (§ 1202.4, subd. (b)).  For the reasons stated here, we will affirm the judgment.

---

[1]  Unspecified statutory references are to the Penal Code.

## I. TRIAL COURT PROCEEDINGS

According to the probation report, defendant sexually touched his girlfriend's two daughters from a previous relationship on multiple occasions while the four of them lived together. In February 2013, then-13-year-old Victim 1 told police that defendant had started touching her inappropriately when she was in fourth grade. Defendant allegedly rubbed his hand on her vagina over her clothes while lying next to her on a bed at least two times. Then-16-year-old Victim 2 told police during a separate interview that defendant regularly rubbed her back at bed time and that on one occasion he rubbed her legs and vagina area over her underwear while she was lying in bed. When Victim 2 was 12, defendant allegedly pulled down his pants to expose his penis while the two were sitting on the couch in the living room. Defendant covered his penis with one hand while reaching under Victim 2's shirt with his other hand and rubbing her chest. During a police interrogation, defendant denied touching the daughters inappropriately but acknowledged that he might have mistakenly touched or rubbed up against the daughters when he was sharing a bed with them and their mother.

Defendant was charged by felony complaint with one count of continuous sexual abuse of a child under 14 years old (§ 288.5, subd. (a)) and four counts of lewd or lascivious acts on a child under 14 years old (§ 288, subd. (a)) related to Victim 1. The complaint alleged two additional section 288, subdivision (a) counts related to Victim 2. As to all counts, the complaint alleged that defendant committed the violations against more than one victim (§ 1203.066, subd. (a)(7)).

The parties informed the trial court that they had reached a plea agreement whereby defendant would plead no contest to the charged counts and receive a total of eight years in state prison. When asked if defendant agreed to that deal, defendant responded, "I guess so." The court asked defendant if he needed more time to speak with his attorney and defendant indicated he did not. The court also referred to a written plea agreement and waiver of rights form defendant had signed and confirmed that the initials

on various parts of the form were defendant's. The court specifically inquired whether defendant reviewed the form carefully with his attorney and defendant responded that he had. Defendant pleaded no contest to each of the charged counts. The trial court did not advise defendant that pleading no contest to the charged counts would require lifelong registration as a sex offender under section 290. On the plea form, a box describing sex offender registration was checked but defendant did not initial the box indicating he read and understood the requirement.

Defendant moved to withdraw his no contest pleas seven months later, arguing that he was coerced into the agreement. The written motion, filed by private counsel defendant retained, alleged that defendant "was subject to severe distress and the influence of those in a position of authority at the time of his plea." The same judge who accepted defendant's no contest pleas conducted an evidentiary hearing on the motion. Defendant testified that the deputy public defender who had represented him at the plea hearing pressured him to accept the plea agreement and told him that if he did not accept the deal he was "looking at life" imprisonment. He said that he met with the deputy public defender for 30 minutes before that hearing and that he argued with him about the deal. Defendant stated he "skimmed" the plea form, that the deputy public defender did not explain its contents to him, and that he merely signed or initialed the form wherever the attorney told him to sign. Defendant acknowledged that he told the judge when entering his pleas that he did not need more time and that he had gone over the form carefully with his attorney.

The trial court asked counsel to explain check marks that were made next to each of the boxes on the plea form defendant was meant to initial. The prosecutor did not attach any great significance to those marks but the private defense attorney argued they indicated that the deputy public defender presented the form to defendant and directed him to initial wherever there was a check mark without reading the form. The court noted that while defendant had met with the deputy public defender for only around 30

3

minutes on the day he entered his pleas, he had met with the attorney on at least three other occasions when the attorney appeared on defendant's behalf at other hearings. The court stated that defendant was essentially arguing that he was not telling the truth at the plea hearing when he told the court both that he did not need more time and also that the deputy public defender had explained the form to him in detail. Regarding that argument, the court explained "[t]he bottom line is I believed him then ... or I would not have taken the plea." The court explicitly stated "I found him credible then [but] I did not find him particularly credible today." Based on those findings, the court denied defendant's motion.

The trial court eventually sentenced defendant to eight years in state prison, consisting of a six-year low term for the section 288.5, subdivision (a) count and two-years consecutive (one-third the middle term) for one of the section 288, subdivision (a) counts related to Victim 2. The court stayed sentence on the four section 288, subdivision (a) counts related to Victim 1 under section 654 and imposed a concurrent six-year middle term for the remaining section 288, subdivision (a) count related to Victim 2. Among other fines, the court imposed a $10,000 restitution fine (§ 1202.4). Defendant objected to that fine, arguing that "he will be incarcerated for the next eight years" and would therefore not have the ability to pay. The court responded: "It would have been higher if you had the ability to pay, and I had the ability to do it. That's just the statutory formula." Defendant obtained a certificate of probable cause, arguing that his no contest pleas were entered under duress.

## II. DISCUSSION

### A. MOTION TO WITHDRAW PLEA BASED ON DURESS

"On application of the defendant at any time before judgment ... the court may, ... for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." (§ 1018.) "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea." (*People v. Cruz* (1974)

4

12 Cal.3d 562, 566.)  A defendant must establish good cause by clear and convincing evidence.  (*Ibid.*)  In addition to good cause, a defendant must demonstrate that he or she would not have accepted the plea bargain but for the factor overcoming the exercise of free judgment.  (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.)  We review the trial court's denial of a motion to withdraw a plea for abuse of discretion, deferring to any credibility determinations made by the trial court.  (*People v. Perez* (2015) 233 Cal.App.4th 736, 738 and 741 (*Perez*).)

Defendant argues that his deputy public defender coerced him to plead no contest to the charged counts, leading to an involuntary plea.  The fatal flaw in defendant's contention is that the trial court expressly found that while it had found defendant credible when he entered the pleas, it "did not find him particularly credible" at the hearing on his motion.  We must accept the trial court's findings that (1) defendant was truthful when pleading no contest that he understood the plea agreement and waiver form and did not need additional time to discuss the matter with his attorney; and (2) defendant was not truthful in his testimony regarding his coercion claim at the motion hearing.  (*Perez, supra,* 233 Cal.App.4th at p. 738; *Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1027 [reviewing courts defer to " ' "determination of credibility of the witnesses and the weight of the evidence." ' "].)

Defendant argues that the trial court's reasoning was "illogical" because the court purportedly "recognized that [defendant] did not comprehend what he was signing by inferring that the attorney may have made the checkmarks on the plea form to indicate where appellant should sign."  To the contrary, the trial court merely stated that it was "consistent with defendant's story" that the check marks could indicate places to sign.  The trial court never found that the deputy public defender failed to explain the form to defendant or that defendant did not understand the form.

5

Defendant analogizes his case to *People v. McGarvy* (1943) 61 Cal.App.2d 557 (*McGarvy*). McGarvy was arrested on suspicion of manslaughter. McGarvy's family retained private counsel and informed the sheriff's office of that fact but neither the family nor the attorney were permitted to see him. The next morning an attorney consulted with McGarvy at the request of the district attorney for 20 to 30 minutes and advised him to plead guilty to manslaughter, which McGarvy did later that morning. Three days later, McGarvy moved to withdraw the guilty plea. (*Id.* at pp. 558-560.) McGarvy's supporting declaration explained that after his arrest he had been precluded from speaking with his family or the attorney the family had retained and "that he was never fully advised of the seriousness of the crime nor did he understand the nature of the proceedings ... ." (*Id.* at p. 559.) A declaration by the attorney who advised defendant to plead guilty stated that the attorney "was called Tuesday morning by the district attorney and asked if he would 'at least talk' to 'a defendant charged with murder and manslaughter,' and that he did talk with the defendant at the county jail." (*Id.* at p. 560.) The court of appeal concluded that McGarvy should have been allowed to withdraw his plea because the attorney who had advised McGarvy "did not represent the defendant by virtue of an order of appointment by the court but only upon request of the district attorney to at least talk to a defendant" and "there was undue haste in the entire disposition of the case." (*Id.* at pp. 560-561.)

*McGarvy* is readily distinguishable. Defendant pled no contest three months after his arrest. He was represented by appointed counsel who had represented him at three previous hearings. He did not move to withdraw his plea until several months after he pleaded no contest. And there was no mention in *McGarvy* of any adverse credibility determinations like those the court made against defendant here.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL REGARDING DURESS

Defendant argues that the trial court should have granted his section 1018 motion because coercion by the deputy public defender rendered his pleas involuntary, violating

6

his due process rights. Defendant cites *Hill v. Lockhart* (1985) 474 U.S. 52 (*Hill*), which involved a collateral challenge to the voluntariness of a guilty plea based on erroneous advice of counsel regarding parole eligibility. (*Id.* at pp. 56-57.) The Supreme Court determined that "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " (*Id.* at p. 56.) The court applied the two-part *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*) test to the challenge to a guilty plea based on ineffective assistance of counsel, meaning that a defendant must show both deficient attorney performance and prejudice from the deficiency. (*Hill,* at p. 58.)

The trial court's adverse credibility findings defeat any showing of deficient performance based on duress. The record contains no evidence that defendant was pressured to accept the plea deal other than his self-serving testimony at the section 1018 hearing, which we view through the lens of the trial court's finding that it was not credible. As defendant cannot show deficient performance on this record, his federal constitutional argument fails.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL REGARDING § 290 REGISTRATION

A trial court must advise a defendant that, as a consequence of admitting any of the offenses enumerated in section 290, the defendant will be required to register as a sex offender. (*People v. McClellan* (1993) 6 Cal.4th 367, 376 (*McClellan*).) Though the trial court did not advise defendant on the record regarding the sex offender registration consequences of his no contest pleas, defendant does not raise that issue on appeal. Instead, defendant argues that he was denied his Sixth Amendment to the United States Constitution right to the effective assistance of counsel because his deputy public defender did not advise him of the registration consequences and his privately-retained counsel did not raise the trial court's failure to advise to support the motion to withdraw his no contest pleas. Here again, to establish ineffectiveness of trial counsel, defendant

7

must show that counsel's performance was deficient and that he was prejudiced by the deficiency. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217 (*Ledesma*).)

### 1. Deputy Public Defender

Defendant argues that "reasonably competent trial counsel would have advised [defendant] of the lifetime registration requirements under section 290" and that failure to do so constitutes ineffective assistance. Citing *McClellan* and other cases regarding a *trial court's* duty to advise defendant on the record about sex offender registration, defendant asserts that deficient performance by the deputy public defender is shown because there is no evidence that the attorney advised defendant about section 290 on the record. However, defendant points to no authority supporting his assertion that defense counsel must advise a defendant about section 290 *on the record*. The record on appeal does not conclusively establish that the deputy public defender failed to properly advise defendant at some point before defendant pleaded no contest. To support that assertion, defendant would need extra record evidence such as affidavits by defendant and the deputy public defender regarding whether such advice was given. As the scope of an appeal is limited to the record of the proceedings below, defendant's argument is not cognizable by direct appeal. (*People v. Williams* (1988) 44 Cal.3d 883, 917, fn. 12 ["An appellant who claims to have been denied constitutionally adequate assistance of counsel and relies on evidence outside the record may seek relief on this basis through a collateral attack on the judgment by petition for writ of habeas corpus."].)

### 2. Privately-Retained Counsel

Defendant contends that his privately-retained counsel provided ineffective assistance by not raising the trial court's failure to advise defendant about section 290 registration as an alternative ground for withdrawing his no contest pleas.

"If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150, citing *Strickland, supra,* 466 U.S. at p. 697.) To

8

satisfy the prejudice prong of an ineffective assistance of counsel claim, defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland,* at p. 694.) A reasonable probability is one " 'sufficient to undermine confidence in the outcome.' " (*Ledesma, supra,* 43 Cal.3d at p. 218, quoting *Strickland,* at pp. 693-694.) A different result means "a result more favorable to the defendant ... ." (*Strickland,* at p. 695.)

In *In re Resendiz* (2001) 25 Cal.4th 230 (plur. opn. of Werdegar, J.) (*Resendiz*), the California Supreme Court discussed the *Strickland* standard in the related context of an attorney's erroneous advisement regarding the immigration consequences of a guilty plea. The *Resendiz* plurality began by paraphrasing the prejudice standard announced in *Hill, supra,* 474 U.S. at pp. 58-59: "a defendant who pled guilty demonstrates prejudice caused by counsel's incompetent performance in advising him to enter the plea by establishing that a reasonable probability exists that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial." (*Resendiz*, at p. 253.) Factors identified by the court relevant to that analysis include: " 'whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.' " (*Ibid.*, quoting *In re Alvernaz* (1992) 2 Cal.4th 924, 938.) "[A]n appellate court also may consider the probable outcome of any trial, to the extent that may be discerned." (*Resendiz*, at p. 254.)

Applying the *Resendiz* factors here, with the exception of the sex offender registration requirement, defendant represented to the trial court when entering his no contest pleas that he had gone over the plea form carefully with the deputy public defender. The trial court later found defendant had been credible when making those statements, leading to an inference that the deputy public defender actually and

9

accurately communicated the terms of the plea agreement with defendant. The record does not conclusively establish whether the deputy public defender informed defendant of the sex offender registration requirements of pleading no contest or whether defendant indicated he was amenable to negotiating a plea bargain. Comparing the plea terms and the possible consequences of proceeding to trial does not support defendant's argument. Defendant received an 8-year prison sentence under the plea agreement, 20 years less than the possible 28-year maximum were he to be convicted of all counts at trial. Faced with that disparity and the reality that conviction at trial would require defendant to register as a sex offender for life, we see no reasonable probability that "he would not have pled guilty and would have insisted, instead, on proceeding to trial." (*Resendiz, supra,* 25 Cal.4th at p. 253.)

### D. RESTITUTION FINE (§ 1202.4)

Defendant contends that the trial court abused its discretion by imposing the maximum restitution fine under section 1202.4 despite finding that defendant did not have the ability to pay. We review the imposition of a section 1202.4 restitution fine for an abuse of discretion. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320.)

"In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (§ 1202.4, subd. (b).) When defendant was convicted, the minimum fine for a felony conviction was $280 and the maximum was $10,000. (§ 1202.4, subd. (b)(1).) In setting the fine, a trial court may use a formula whereby the fine equals the minimum fine multiplied by the number of years imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant was convicted. (§ 1202.4, subd. (b)(2).) "A defendant shall bear the burden of demonstrating his or her inability to pay." (§ 1202.4, subd. (d).) A trial court is not required to make express findings regarding the factors bearing on the

amount of the fine, nor to hold a separate hearing to determine the amount of the fine. (*Ibid.*)

The trial court stated it used the statutory formula to arrive at the $10,000 maximum fine. When defendant objected, the trial court responded that the fine "would have been higher if you had the ability to pay, and I had the ability to do it."[2] Defendant interprets that statement as a finding by the court that defendant did not have the ability to pay a restitution fine. Contrary to defendant's interpretation, it appears the court did not find defendant unable to pay the fine imposed but rather that the court did not believe defendant had the ability to pay a hypothetical amount *over* the statutory maximum. As for the trial court's implicit finding that defendant had the ability to pay the statutory maximum, defendant's only effort to show his inability to pay was his counsel's statement that defendant would be incarcerated for the next eight years. That observation, without more, did not demonstrate his inability to pay. (*People v. Gamache* (2010) 48 Cal.4th 347, 409 [affirming § 1202.4, subd. (b) restitution fine when the defendant pointed "to no evidence in the record supporting his inability to pay, beyond the bare fact of his impending incarceration."].) We find no abuse of discretion.

### III.   DISPOSITION

The judgment is affirmed

---

[2] Imposing the amount yielded by the statutory formula ($13,440, consisting of $280 times the eight-year sentence times six felony counts) would exceed the statutory maximum; the trial court therefore imposed the lower $10,000 amount. (§ 1202.4, subd. (b)(2).)

_____

Grover, J.


**WE CONCUR:**



_____

Rushing, P.J.




_____

Márquez, J.